1 | Christopher Sproul (State Bar No. 126398)
Jodene Isaacs (State Bar No. 226895)
2 | ENVIRONMENTAL ADVOCATES
5135 Anza Street
3 | San Francisco, California  94129
Telephone: (415) 533-3376
4 | Facsimile: (415) 358-5695
E-mail:  csproul@enviroadvocates.com
5 |          jisaacs@enviroadvocates.com

6 | Attorneys for Plaintiff
BAYKEEPER

7

8 | IN THE UNITED STATES DISTRICT COURT

9 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 | BAYKEEPER,                                    ) Civil No. CV-05-00398-MMC
                                                  )
12 |            Plaintiff,                         ) [Proposed] ORDER ENTERING
                                                  ) AMENDED CONSENT DECREE
13 | v.                                            )
                                                  ) (Federal Water Pollution Control Act,
14 | ALCO IRON AND METAL COMPANY, a               ) 33 U.S.C. §§ 1251 et. seq.)
     corporation, and KEM KANTOR, an individual,  )
15 |                                               )
                Defendants.                        )
16 | _____ )

17

18

19

20        WHEREAS this case closed in 2005 but the Court expressly retained continuing

21   jurisdiction over the Consent Decree filed in this case on September 7, 2005. and entered by the

22   Court on November 3, 2005;

23        WHEREAS, Baykeeper notified Alco on June 5, 2008 that Alco had failed to comply

24   with numerous requirements of the  2005 Consent Decree and that Alco was in violation of the

25   Clean Water Act;

26        WHEREAS the parties have jointly agreed to amend the storm water compliance

27   measures in existing consent decree and extend its term by two years in a cooperative effort to

28   avoid further litigation;

1    WHEREAS, Baykeeper and Alco, by their authorized representatives, consent to the

2  entry of the Amended Consent Decree; and

3    WHEREAS, Baykeeper and Alco agree that settlement of this matter and entry of this

4  Amended Consent Decree are in the public interest and made in good faith in an effort to avoid

5  expensive and protracted litigation to enforce the 2005 Consent Decree.

6    It is HEREBY ORDERED that the existing Consent Decree entered November 3, 2005.

7  on  is hereby superceded by the attached Amended Consent Decree attached to this Order.

8

9  APPROVED AND SO ORDERED, this 4th day of  November __, 2008.

10

11  by:  _____

12    MAXINE M. CHESNEY

13    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  PROPOSED ORDER ENTERING AMENDED CONSENT DECREE                    Page 2

Jodene Isaacs (State Bar No. 226895)
Christopher Sproul (State Bar No. 126398)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California   94121
Telephone:  (415) 533-3376
Facsimile:   (415) 358-5695

Attorney for Plaintiff
Baykeeper

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAYKEEPER, | Civil No. CV-00398-MMC |
| Plaintiff, | |
| v. | AMENDED CONSENT DECREE |
| ALCO IRON AND METAL COMPANY, a corporation, and KEM KANTOR, an individual, | (Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et. seq.) |
| Defendants. | |

WHEREAS, Baykeeper is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the San Francisco Bay and other area waters;

WHEREAS, Alco Iron and Metal Company is a family-owned California business engaged in the collection and recycling of scrap metal with a facility at 321 Azuar Avenue, Vallejo, California (the "Mare Island Facility") and at 1091 Doolittle Drive, San Leandro, California (the "San Leandro Facility").  Alco Iron and Metal Company shall hereinafter be referred to as "Alco."

WHEREAS, storm water discharges associated with industrial activity are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 91-13-DWQ (as amended by Water Quality Order 92-12 DWQ and 97-03-DWQ), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §1342 (hereinafter "General Permit");

WHEREAS, on November 15, 2004, Baykeeper served Alco, the United States Environmental Protection Agency, the State Water Resources Control Board, the California Regional Water Quality Control Board, and the United States Attorney General with a notice of intent to file suit ("60-Day Notice") under Sections 505(a)(1) and (f) of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1365(b)(1)(A), for violations of the Act and the General Permit at the Facility;

WHEREAS, Alco alleges to have remedied the conditions leading to allegations of the 60-Day Notice prior to the filing of the Complaint and Baykeeper disputes these allegations;

WHEREAS, Baykeeper filed a complaint ("Complaint") against Alco in the United States District Court, Northern District Court of California on January 28, 2005;

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the statutory review period pursuant to 33 U.S.C. §1365(c);

WHEREAS, all actions taken by Alco pursuant to this Consent Decree shall be made in compliance with all applicable federal, state, and local rules and regulations;

WHEREAS, the Parties agree that it is in their mutual interest to resolve this matter without further litigation;

WHEREAS, the Parties agree this Consent Decree is not intended in any way to prevent future lawful expansion or reorganization of Alco operations provided such expansion or reorganization is consistent and in compliance with the terms of this Consent Decree;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I.  COMMITMENT OF ALCO

1. **Commencement of Compliance Measures:**  Beginning immediately, Alco shall commence all measures needed to operate the Mare Island and San Leandro Facilities in full compliance with the requirements of the General Permit and applicable sections of the Clean Water Act.

2. **BMP Implementation:**  To prevent storm water from coming into contact with contaminants at the Mare Island and San Leandro Facilities and/or to prevent the discharge of contaminated storm water and non-storm water from the Mare Island and San Leandro Facilities into the waters of the State and of the United States, Alco shall implement appropriate structural and non-structural Best Management Practices ("BMPs") as defined in the General Permit and as described more fully below.

3. **Designated Discharge Points:**  Within 30 days of execution of this Consent Decree, Alco shall identify every point at the Mare Island and San Leandro Facilities at which storm water is discharged ("Designated Discharge Point").  Each Designated Discharge Point shall be numbered and clearly labeled on the Facilities' respective Site Maps.

## II.     MARE ISLAND FACILITY COMPLIANCE MEASURES

4. **Designation of Process Area:**  The outdoor sorting, shredding, and bailing processing areas located at the southwestern side of the Mare Island Facility will hereinafter be referred to, and are designated on the Facility Site Map, as the "Process Area."  Alco shall operate the Mare Island Facility such that operational activities that generate finely divided metals, dust, shavings, or other pollutants that can be tracked or entrained in storm water, including but not limited to, crushing, bailing, grinding, and torch cutting, are principally conducted within the Process Area until such time that facility improvements in other areas facilitate appropriate BMPs and such BMPs are in place to prevent tracking or entraining of finely divided materials into storm water.

5.   **Designation of Storage Area:**  The outdoor sorting and storage area located to the north of the warehouse at the Mare Island Facility will hereinafter be referred to as the "Storage Area," and shall be designated on the Site Map as such.  Alco shall not conduct operational activities that generate finely divided metals, dust, shavings, or other pollutants that can be tracked or entrained in storm water, including but not limited to, crushing, bailing, grinding, and torch cutting ("operational activities") in the Storage Area until Alco completes paving and other site improvements in this area and institutes similar storm water BMPs in the Storage Area as Alco must implement for the Process Area under this Decree.

    (a) **Designation of Driveway Areas**: The roadway located to the south of the warehouse that extends from Azuar Drive to Alco's truck scale shall be referred to as the "Southern Driveway Area" and shall be designated on the Site Map as such.   The driveway in front of the warehouse where customer vehicles park and truck traffic enters and exits shall be referred to as the "Front Driveway" and shall be designated as such.  All of the drop inlets along the Southern Driveway shall be designated on the Site Map, and shall be included in the activities described under Paragraphs 9, 10, 11, 13, and 50.

    (b) **Sampling of Drop Inlets along Southern Driveway**:  By September 30, 2008, Alco shall update its Site Map and designate the location of all drop inlets located between and in front of Buildings 627 and 629 on Azuar Drive.  During the 2008-2009 wet season, Alco shall treat each of the drop inlets as Discharge Points and sample them according to the procedures set forth in Paragraph 50. If two consecutive samples from each of the Discharge Points results in pollutant levels below the Target levels set forth in the Sampling Chart for any parameter sampled, Alco need not conduct additional sampling during that Wet Season from that discharge point.  In the 2009-2010 wet season, Alco shall only sample the two drop inlets with consistently highest concentrations of metals and solids as determined by the samples taken in the 2008-2009 wet season.

6.   **Hydraulic Controls:**  By September 30, 2005, Alco shall design and install berms or equivalent structural controls necessary to prevent storm water from flowing into, through, or out of the Process Area other than through the engineered storm water conveyance system.  Alco

shall operate the Mare Island Facility such that water, including non-storm water and storm water discharges, are otherwise directed away from the Process Area.  Alco shall implement similar hydraulic controls which prevent storm water from flowing into, through, or out of the Storage Area other than through the engineered storm water conveyance system before commencing any operational activities in the Storage Area.  Thereafter, Alco shall operate the Mare Island Facility such that water, including non-storm water and storm water discharges, are otherwise directed away from the Storage Area.

7.   **Sealing of Storm Drain Inlet/Catch Basin:**  By September 30, 2005, Alco shall permanently seal the southwestern most storm drain inlet/catch basin within the Process Area adjacent to the Shear/Baler to prevent the discharge of any storm water or process water, or solid wastes, or liquid wastes into this storm drain inlet/catch basin. The permanent seal shall fully prevent any dust, debris, or water from entering the storm drain inlet/catch basin and shall be fixed in place so that it cannot be displaced or moved.

8.   **Paving and Improving Storage Area:**  By September 30, 2005, Alco shall pave the Storage Area and complete storm drain inlet/catch basin and storm water filter system designed to capture and treat all storm water runoff from the Storage Area, except for a 200' wide by 500' long strip at northeast corner of the Storage Area which will be graveled (not paved).

9.   **Initial Storm Water Treatment System:**  By September 30, 2005, Alco shall collect and treat storm water from the Process Area, Storage Area, and Southern Driveway prior to discharge. Initially, treatment shall consist of filters in each storm drain inlet or catch basin receiving storm water from the Process Area and Storage Area and well-maintained sand/oil interceptors, or other means of Alco's choosing designed to achieve, or at least advance, compliance with Target and Benchmark levels in the attached Exhibit 1.  Alco shall inspect the storm drain inlets/catch basins on a daily basis during the rainy season (October 1 to May 31) to ensure that the filtering devices are not torn, clogged or otherwise in a condition that would impair their efficacy.  Filter device installation shall include support by a rigid frame or other equivalent method to prevent short-circuited flows.  Alco shall clean out filters to all storm drain inlets or catch basins following each storm event and shall properly dispose of any sediments or other pollutants

removed from storm drain inlets or catch basins.  Filters shall be changed or replaced as often as necessary to retain optimal removal of pollutants.  During the dry season (June 1 to September 30), Alco shall seal, cap, or cover all of the storm drain inlets/catch basins in the Process Area and Storage Area to prevent oil and grease, sediments, and other pollutants from building up in and around the filtering devices and storm drain inlets/catch basins.

10. **Storm Drain Inlet/Catch Basin Inspection:**  Alco shall inspect all storm drain inlets/catch basins on or around the Mare Island Facility into which storm water from the Facility may flow prior to the beginning of each wet season, within seven (7) days of the first anticipated storm event or September 15 of each year, which ever is earlier.  During this inspection, Alco shall clean each storm drain inlet/catch basin and associated filter device with a vacuum or other effective cleaning device/method to remove fugitive dusts or solids that might have entered the storm drain inlet/catch basins despite the placement of coverings over the storm drain inlet/catch basins.  The filter devices within each storm drain inlet/catch basin shall also be checked for integrity and replaced as necessary.

11. **Storm Drain Inlet/Catch Basin Log:**  Alco shall prepare and maintain a Log of all Storm Drain Inlet/Catch Basin Inspections, Maintenance and Cleaning at the Facility.  The Log shall identify the person who conducted the inspections, the date of inspection, the date of cleaning or maintenance, the date of filtration system replacement, and any other relevant information.  Alco shall forward the Log to its in-house counsel on a monthly basis.  Alco shall make the Log available to Baykeeper upon request.

12. **Additional Management/Treatment of Storm Water:**  By March 1, 2006, Alco shall complete a further comprehensive study of the following additional treatment/source reduction measures for reducing the level of pollutants in storm water discharge from the Facility:  (a) construction and operation of a retention pond and/or perimeter trench to retain storm water from the Process Area and/or Storage Area for sufficient retention times prior to discharge such that levels of pollutants in discharge meet Target and Benchmark levels in the attached Exhibit 1, (b), installation of a hook-up to the local publicly owned treatment works sanitary sewage collection system and the discharge of all storm water from the Process Area and/or Storage

Area to this collection system, and (c) installation of a roof/canopy structure over some or all of the Process Area and/or Storage Area to eliminate or reduce storm water contact with potential sources of pollution in these areas, (d) identification and segregation of pollutant generating materials to areas where they can be covered and isolated from rainfall and storm water flow and/or to areas where storm water can be routed to the sanitary sewer or effectively filtered and treated on-site, and (e) such other measures as Alco deems appropriate for study.   By March 15, 2006, Alco shall submit a report to Baykeeper analyzing:  (a) the expected storm water pollutant reduction benefits of the measures, (b) the costs of the measures, (c) the public agency approvals and permits needed to implement the measures, (d), the time reasonably needed to implement the measures, (e), the year storm event for which the measures would be designed to be effective, (f) and all factors specified in CWA section 304(b) for determining whether the measures constitute best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT").  The report shall include Alco's recommendations for one or more additional treatment or management measures ("Treatment Measures") reasonably likely to achieve compliance with Target and Benchmark levels and timelines for reasonably expeditious implementation of the Treatment Measures.  Baykeeper shall have thirty days to review and suggest revisions to the Report, including the Treatment Measures Recommendations.  Within thirty days of receiving Baykeeper's comments on Alco's report, Alco shall revise the Report in accord with Baykeeper's suggestions or explain in writing why it is rejecting these suggestions.  Any party may thereafter seek Dispute Resolution in accord with paragraph 69 of this Decree if the parties remain in dispute over the Report or the Treatment Measures Recommendations.  After the parties reach agreement on the Treatment Measures Recommendations, or after Dispute Resolution resolves any dispute concerning such Recommendations, Alco implement the Treatment Plan Recommendations as an obligation of this Decree, according to the timelines set in the Report.

13. **Site Sweeping and Cleaning:**  Immediately upon execution of this Consent Decree, Alco shall sweep the Process Area, Southern Driveway Area, and Front Driveway Area (collectively "driveways") not less than one time per day and more often as necessary to prevent the tracking

of metal shavings and other pollutants outside the Process and Driveway Areas and to minimize the area that metal shavings and other pollutants are dispersed.  Alco may employ mechanical sweepers until August 31, 2009. At which point, Alco shall either retain an outside commercial sweeping vendor who services are required to be used 3 days a week and that uses a regenerative sweeper to reach all areas where truck sweepers can effectively reach or Alco can obtain its own regenerative sweeper for daily use.  If Alco retains an outside service to provide regenerative sweeping, Alco shall have the entire facility swept with the regenerative sweeper at least once week during dry season and at least three times a week during the wet season and continue to sweep daily with its mechanical sweeper and as needed to prevent accumulation of pollution generating materials. Alco shall purchase a push type outdoor vacuum and conduct manual sweeping with the push vacuum in areas unreachable by mechanical sweeping.  The push type outdoor vacuum shall be used in conjunction with manual push brooms such that the push brooms dislodge materials from the cracks in the pavement which can be collected by the vacuum. Alco may initially employ its recently acquired mechanical sweeper for this sweeping and shall evaluate the effectiveness of this sweeper.  Should Alco continue to exceed Benchmarks and Target Levels, then Alco shall analyze whether employing a regenerative sweeper should be included in an Action Plan adopted pursuant to paragraph 57.  For purposes of this Consent Decree, a regenerative sweeper is a mechanized sweeper that uses a blast of air in front of the brushes to raise tiny particles and improve sweeping performance.  At least annually, Alco shall conduct a thorough inspection of the Facility to determine whether an additional comprehensive site cleaning is warranted with power wash or similar effective techniques.  Alco shall not discharge any waste fluids or solid wastes generated in site cleaning to storm drain inlets or waterways.  Alco shall store and dispose of all wastes generated in Facility cleaning and sweeping in a manner that complies with all local, state, and federal laws.  Alco shall institute these sweeping and cleaning measures for the Storage Area after completing paving of this area and before commencing operational activities in this area.  Alco shall acquire a handheld Global Positioning System ("GPS") tracker for use with the truck sweeper.  The Sweeper operator shall use the GPS as an aid to ensure that all designated areas have actually

1  been swept daily.

2  (a) Alco shall remove any storm water that ponds around the discharge point located the Front

3  Driveway around Discharge Point 3.  The ponded storm water shall be removed at the start

4  of business (if present), at the close of business (if present), and as needed during operating

5  hours to prevent any tracking of the water onto Azuar Drive.

6  14.  **Site Sweeping and Cleaning Log:**  Alco shall keep a log of the sweeping and any other site

7  cleaning activity performed at the Mare Island Facility.  The person carrying out the sweeping

8  or cleaning shall record his or her name, the locations that were swept or cleaned, the date and

9  time that sweeping or cleaning was completed, and any other relevant information.  Alco shall

10  forward the Sweeping and Cleaning Log to its in-house counsel on a monthly basis.  Alco shall

11  make the sweeping and cleaning log available to Baykeeper upon request.

12  15.  **Prevention of Pollutant Discharge to Azuar Drive:**  Immediately upon execution of this

13  Consent Decree, Alco shall implement BMPs necessary to ensure that industrial pollutants from

14  operational activities are not discharged from the Facility onto Azuar Drive.  Prevention

15  measures shall include ensuring that materials or equipment are not stored in a manner that

16  allows spillage or tracking onto the parking lots or driveways surrounding the Mare Island

17  Facility.  Alco may use truck mounted sweepers (mechanical sweepers no later than August 31,

18  2009 and must start to use a regenerative type sweeper after August 31, 2009) to sweep Azuar

19  Drive at least 500 feet from the Front Driveway Area on a daily basis.  If Alco elects to retain an

20  outside sweeping service the regenerative sweeper must be used at least three days a week to

21  sweep Azuar Drive during the wet season and once a week during the dry season, but Alco will

22  sweep with its mechanical sweeper on those days which are not swept by the regenerative

23  sweeper.   If Alco obtains its own regenerative sweeper daily sweeping will be required.

24  16.  **Tracking:**  Alco shall implement BMPs to prevent tracking of pollutants from the Mare Island

25  Facility.  Immediately upon execution of this Consent Decree for existing paved areas and upon

26  completion of improvements to the Facility for unpaved areas, Alco shall undertake enhanced

27  BMP measures to prevent tracking of pollutants from the Facility, such as sweeping of the

28  Process Area, Storage Area, Southern Driveway Area, and Front Driveway Area as described

above.  Sweeping and other appropriate BMPs shall be sufficient to prevent contaminants from being moved around the Mare Island Facility, to reduce the entrainment of pollutants into storm water flows, to prevent pollutants from being blown off the Facility into the adjacent wetlands, and to prevent pollutants from being tracked off the Facility onto surface streets.

17.  **Waste, Hazardous Materials Storage Area:**  On and after the date of execution of this Consent Decree, Alco shall implement a system:  (1) for identifying all toxic and hazardous materials, including batteries, oil, solvents and hazardous or potentially hazardous waste materials such as waste oil and used absorbent materials that are delivered to or generated at the Mare Island Facility and (2) for segregating such identified materials from other materials at the Facility.  By September 30, 2005, Alco shall complete a thorough site inspection to identify all toxic and hazardous materials, including batteries, oil, solvents and hazardous or potentially hazardous waste materials such as waste oil and used absorbent materials stored or kept at the Mare Island Facility.  Thereafter, Alco shall store all such materials in a single area, under cover and on an impermeable surface, out of potential contact with flooding associated with storm water.

18.  **Loading/Unloading Areas:**  Immediately upon execution of this Consent Decree, loading and unloading of scrap materials shall take place only within the Process Area.  Loading/Unloading of scrap materials also may be conducted in the Storage Area, providing structural and treatment controls are in place to prevent storm water contamination as described above.  Alco shall sweep all loading and unloading areas as necessary to remove contaminants.  If a spill occurs from materials awaiting processing, Alco shall immediately isolate and clean the loading area.

19.  **Vehicle and Equipment Management:**  Within 45 days of the execution of this Consent Decree, Alco shall implement BMPs to minimize pollutant release from stored or parked equipment such as forklifts, hydraulic lifts, and other heavy equipment.  Such BMPs shall include parking all mobile heavy equipment in a consolidated parking area behind Building 629 overnight and during other prolonged hours of non-operation of such equipment, placing drip pans under stored or parked equipment with the potential to leak pollutant-containing fluids, weekly inspections for evidence of leaks from such equipment, and immediate cleaning up of

1  any spills, drips, or leaks from such equipment.  Alco shall dispose of any spilled substances and

2  absorbent materials used in cleaning up spills in accordance with all local, state, and federal

3  laws and regulations.

4  20.  **Vehicle and Equipment Maintenance:**  Alco shall not conduct vehicle or movable equipment

5  maintenance or repair in outdoor, uncovered areas at the Mare Island Facility during rainfall.

6  Alco shall further not conduct vehicle or movable equipment maintenance or repair in outdoor,

7  uncovered areas at the Facility if Alco could feasibly conduct the maintenance or repair in a

8  covered area.  Whenever Alco conducts maintenance or repair activities in non-covered areas,

9  Alco shall inspect the area where the maintenance or repair occurred and clean-up any waste

10  products, including pollutant containing fluids, deposited or spilled on the ground as a result of

11  the maintenance or repair.

12  21.  **Maintenance of BMP Structural Controls:**  Immediately upon execution of the Consent

13  Decree, Alco shall maintain structural BMPs at the site in good operating condition at all times.

14  22.  **Fueling Activities:**  Alco shall utilize a containment system with an impermeable surface for

15  the fuel storage tanks at the Mare Island Facility in accordance with applicable laws and

16  regulations.  The containment system shall be designed and constructed to hold the entire

17  capacity of the largest single container and sufficient freeboard to contain precipitation.  Alco

18  shall conduct fueling activities only on an impervious surface, in areas designated in its SWPPP.

19  Alco shall require that its fuel supplier or employees immediately remove and dispose of any

20  fuel spills in accordance with all applicable local, state, and federal laws and regulations.

21  23.  **Storage of Waste and Received Material Bins:**  By September 30, 2005, Alco shall store all

22  waste storage bins at the Mare Island Facility indoors, or if stored outdoors, shall cover such

23  waste storage bins, except when bins are being dumped, to prevent dust and other materials from

24  being blown outside the waste storage bins and to minimize storm water runoff from such bins.

25  Alco shall unload all drop boxes containing received materials by the end of each work day in

26  which they are received or the following workday for night time deliveries or shall cover such

27  drop boxes with a secured tarp or similar device if boxes are to be stored overnight with

28  materials still in them.

24.  **Amendment of SWPPP:**  By September 30, 2008, Alco shall amend the Mare Island Facility SWPPP to incorporate all improvements and best management practices set forth in this Consent Decree.  Alco shall also update the SWPPP as needed to make the document consistent with the requirements of the General Permit and reflect the current stormwater BMPs at the Facility. Alco shall provide a copy of the Amended SWPPP to Baykeeper within seven (7) days of completion.  Within fourteen (14) days of notification by Baykeeper, Alco shall make all reasonable changes to the Amended Facility SWPPP that are requested by Baykeeper unless Alco invokes Dispute Resolution.

25.  **Amendment of the Site Map:**  By September 30, 2008, Alco shall amend the Facility Site Map to include all components set forth in the General Permit and this Consent Decree.  A copy of the Amended Site Map shall be provided to Baykeeper within seven (7) days of completion. Within fourteen (14) days of notification by Baykeeper, Alco shall make all reasonable changes to the Facility Site Map that are requested by Baykeeper unless Alco invokes Dispute Resolution.

### III.    SAN LEANDRO FACILITY COMPLIANCE MEASURES

26.  **Designation of Southern Processing Area:**  The uncovered sorting, shredding, and bailing processing areas of the San Leandro Facility that drain storm water to the city of San Leandro sanitary sewer system will hereinafter be referred to and designated on the Facility Site Map as the "Southern Processing Area."  Alco shall not discharge storm water or non-storm water from the Southern Processing Area to any storm drain or off-site ground location.  Alco shall not intermingle water that is collected or contained within the Southern Processing Area with storm water discharged from the other areas of the San Leandro Facility.

27.    **Designation of the Davis Street Receiving Area:**  The outdoor customer unloading area on and adjacent to Davis Street will hereinafter be referred to and designated on the Facility Site Map as the "Davis Street Receiving Area."  This includes the entire area Alco and/or its customers use to unload scrap metal.  This Area will be designated on the San Leandro Facility Site Map.

28.  **Designation of the Yard Process Area:**  The outdoor loading, sorting, and storage area

Amended Consent Decree                                          Page 11

immediately south of Eden Road at the San Leandro Facility will hereinafter be referred as the "Yard Process Area" and shall be designated as such on the Site map.

29. **Loading and Unloading of Scrap Materials:**  Immediately upon execution of this Consent Decree, Alco shall load and unload scrap materials only within designated loading areas at the San Leandro Facility.  Such loading areas shall be on the identified and defined on the Site Map.  If a spill of pollutant containing fluid occurs from recycled materials awaiting processing, Alco shall immediately isolate the area where the spill occurs and clean up the spill appropriately, including using absorbent materials as appropriate.  Alco shall dispose of all cleaned-up fluids and used absorbent materials in accord with all applicable laws.   Alco shall amend its SWPPP for the San Leandro Facility to designate all loading areas for the Facility.

30. **Hydraulic Control:**  By September 30, 2005, Alco shall design and install or maintain berms or equivalent structural controls to prevent the discharge of storm water from the Facility to Davis Street.  Such flows shall be directed to areas that drain into Alco's sanitary sewer discharge.

(a) Prior to the start of the 2008-2009 wet season, Alco shall purchase a push type outdoor vacuum and sweep the entire Davis Street frontage at least once a day with the vacuum.  The push type outdoor vacuum shall be used in conjunction with manual push brooms such that the push brooms dislodge materials from the cracks in the pavement which can be collected by the vacuum.  Alco shall continue to utilize manual push brooms along the entire Davis Street frontage and driveways during operating hours to prevent pollutants from collecting and/or being tracked into Davis Street.

31. **Eden Road Access Point BMPs**:  By September 30, 2005, Alco shall implement BMPs to ensure that industrial pollutants are not discharged from the San Leandro Facility driveways leading to Eden Road.  BMP measures shall include installation and maintenance of site contouring/hydraulic barriers to prevent water flow from the San Leandro Facility out the Eden Road driveway to Eden Road.  Until such time as Eden Road is paved or lined with gravel, BMP measures shall further include minimizing the use of the Eden Road driveway for vehicle ingress to the San Leandro Facility to the maximum extent practicable, including not using the Eden

Road driveway for vehicle ingress on any day following measurable rainfall at the San Leandro Facility site.   In addition, Alco shall at the close of every business day or before accumulation of significant rainfall (whichever is sooner) cleanup and remove any mud, dust or sediment tracked onto the San Leandro Facility as a result of using the Eden Road driveway for vehicle ingress.  Alco shall include in its comprehensive study of additional treatment/source reduction measures feasibility analysis required pursuant to paragraph 37 paving of Eden Road or lining Eden Road with gravel as a more effective potential BMP.

32.  **Davis Street Pollution Prevention**: Beginning immediately, Alco shall implement BMPs to ensure that industrial pollutants from activities within the Davis Street Receiving Area are not tracked, spilled, blown, or conveyed by surface water flow onto Davis Street.  Such BMPs shall include:  (a) ensuring that Alco or Alco's customers' materials or equipment are not unloaded or stored in a manner that allows spillage of pollutant materials onto Davis Street or the driveway or sidewalks fronting Davis Street, (b) immediate sweeping up of dust, sediment, or other dry pollutant materials spilled or deposited in the Davis Street Receiving Area, the driveways or sidewalks fronting Davis Street and the San Leandro Facility, or Davis Street to prevent movement of such pollutants onto surrounding sidewalks and streets (provided such dust, sediment, or pollutant materials are present due to Alco's operations or customer unloading of materials at the San Leandro Facility), (c) daily sweeping of the Davis Street Receiving Area and fronting sidewalk at close of business following any unloading in this area to ensure that any accumulated pollutants in this area are not washed or blown into storm drains or Davis Street overnight, (d) sweeping of the Davis Street Receiving Area twice a day (once by noon and again at closing time) on any day of rainfall during which customers unload materials at the Davis Street Receiving Area, (e) immediate cleaning up of any spills of pollutant containing fluids with absorbent materials or other effective technique, (f) inspecting all equipment, including hydraulic lifts, used in the Davis Street Receiving Area prior to use to ensure that no leaking or dripping of oils or fluids are occurring from such equipment and not using any leaking equipment in this area, and (g) powerwashing the Davis Street Receiving Area annually. The powerwash shall utilize the appropriate controls necessary to prevent any discharges to

Davis Street or any storm drains.  Alco shall dispose of any spilled materials in this area and any absorbent materials used for cleaning up spills in this area in accordance with all local, state and federal laws and regulations.

(a) Should Alco move their sales and bin storage operations from their current location, all BMPs and other requirements described in paragraphs 37 through 65 of this consent decree shall apply to the new location as appropriate.  Alco shall inform the Region al Water Quality Control Board of the change in operations and apply for coverage under General Permit for the new facility if separate coverage is required.

33.   **Storm Water Treatment:**  By September 30, 2005, Alco shall design and implement an initial treatment system for storm water collected by all storm drain inlets/catch basins at the San Leandro Facility.

34.   **Initial Storm Water Treatment System:**  By September 30, 2005, Alco shall treat all storm water discharged from the San Leandro Facility, other than storm water discharged to the sanitary sewer, prior to discharge.  Initially, treatment shall consist of filters in each storm drain inlet or catch basin receiving storm water or other means of Alco's choosing designed to achieve, or at least advance, compliance with Target and Benchmark levels in the attached Exhibit 1.  Alco shall inspect the storm drain inlets/catch basins on a daily basis during the rainy season (October 1 to May 31) to ensure that the filtering devices are not torn, clogged or otherwise in a condition that would impair their efficacy.  Filter device installation shall include support by a rigid frame or other equivalent method to prevent short-circuited flows.  Alco shall clean out filters to all storm drain inlets or catch basins following each storm event and shall properly dispose of any sediments or other pollutants removed from storm drain inlets or catch basins.  Filters shall be changed or replaced as often as necessary to retain optimal removal of pollutants.  During the dry season (June 1 to September 30), Alco shall seal or cap cover all Facility storm drain inlets/catch basins to prevent oil and grease, sediments, and other pollutants from building up in and around the filtering devices and storm drain inlets/catch basins.

35.   **Storm Drain Inlet/Catch Basin Inspection:**  Alco shall inspect all storm drain inlets/catch basins on or around the San Leandro Facility into which storm water from the Facility may flow

prior to the beginning of each wet season, within seven (7) days of the first anticipated storm event or September 15 of each year, which ever is earlier.  During this inspection, Alco shall clean each storm drain inlet/catch basin and associated filter device with a vacuum or other effective cleaning device/method to remove fugitive dusts or solids that might have entered the storm drain inlet/catch basins despite the placement of coverings over the storm drain inlet/catch basins.  Alco shall also check the filter devices within each storm drain inlet/catch basin for integrity and shall replaced the devices as necessary.

36.  **Storm Drain Inlet/Catch Basin Log:**  Alco shall prepare and maintain a Log of all Storm Drain Inlet/Catch Basin Inspections, Maintenance and Cleaning at the Facility.  The Log shall identify the person who conducted the inspections, the date of inspection, the date of cleaning or maintenance, the date of filtration system replacement, and any other relevant information.  Alco shall make the Log available to Baykeeper upon request.

37.  **Additional Management/Treatment of Storm Water:**  By March 1, 2006, Alco shall complete a further comprehensive study of the following additional treatment/source reduction measures for reducing the level of pollutants in storm water discharge from the San Leandro Facility:  (a) installation of measures to route a greater percentage of storm water flow from the Facility into the local publicly owned treatment works sanitary sewage collection system, (b) installation of a roof/canopy structure over some or all of the areas of the Facility that are currently uncovered,  (c) installation of additional storm water treatment measures, such as improved pollutant filters, (d) identification and segregation of pollutant generating materials to areas where they can be covered and isolated from rainfall and storm water flow and/or to areas where storm water can be routed to the sanitary sewer or effectively filtered and treated on-site, (e) paving Eden Road or lining Eden Road with gravel, (f) repairing any leaking water conveyances that are a source of non-storm water inundation of Eden Road, and (g) such other measures as Alco deems appropriate for study.   By March 15, 2006, Alco shall submit a report to Baykeeper analyzing:  (a) the expected storm water pollutant reduction benefits of the measures, (b) the costs of the measures, (c) the public agency approvals and permits needed to implement the measures, (d), the time reasonably needed to implement the measures, (e), the

year storm event for which the measures would be designed to be effective, (f) and all factors specified in CWA section 304(b) for determining whether the measures constitute best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT").  The report shall include Alco's recommendations for one or more additional treatment or management measures ("Treatment Measures") reasonably likely to achieve compliance with Target and Benchmark levels and timelines for reasonably expeditious implementation of the Treatment Measures.  Baykeeper shall have thirty days to review and suggest revisions to the Report, including the Treatment Measures Recommendations.  Within thirty days of receiving Baykeeper's comments on Alco's report, Alco shall revise the Report in accord with Baykeeper's suggestions or explain in writing why it is rejecting these suggestions.  Any party may thereafter seek Dispute Resolution in accord with paragraph 69 of this Decree if the parties remain in dispute over the Report or the Treatment Measures Recommendations.  After the parties reach agreement on the Treatment Measures Recommendations, or after Dispute Resolution resolves any dispute concerning such Recommendations, Alco shall implement the agreed upon or resolved Treatment Plan Recommendations as an obligation of this Decree, according to the timelines set in the Report.

(a)  Alco to install additional treatment system to be implemented by January 1, 2009 which will treat all storm water from the facility (excluding area that currently discharges to the City of San Leandro's sanitary sewer system and Davis Street Receiving Area frontage) prior to discharge.

(b)  Prior to designing and installing the treatment system, Alco shall provide the results of any pilot tests as well as the conceptual proposal for the facility system.  After the conceptual proposal is approved by Baykeeper, Alco will design the treatment system such that it is capable of capturing the runoff associated with a 25 year/ 24 hour storm event.  If the treatment system is not designed to capture a 25 year/ 24 hour storm event, Alco may propose an alternative capture capacity that Alco provides an explanation as to why the alternative capacity is adequately protective.  Alco will provide the following information pertaining to the design of the treatment system to Baykeeper:

     i.     Facility flow pattern: Alco will provide Baykeeper with a contour map which denotes where storm water runoff flows throughout the facility, where it will be captured, and where it will be diverted to the treatment system. Any flow that is not captured and treated by the system will also be indicated on the contour map.

     ii.     Collection system storage and detention volumes:  Alco will provide Baykeeper with information as to the location of any collection sumps (such as drop inlets, manholes or other such conveyance devices), plumbing (such as trenches, pipes, flumes), storage vessels (such as tanks, sumps, ponds), and the capacity of any storage vessels that are part of the treatment system.

     iii.     Collection and transfer system flow rate:  Alco will provide Baykeeper with information as to the limiting flow rate (i.e. gallons per minute) for each component of the collection system.

     iv.     Treatment system flow rate:  Alco will provide Baykeeper with information as to the treatment flow rate (i.e. gallons per minute) for each component of the collection system.

     v.     Maintenance cycle:  If available, Alco will provide Baykeeper with an estimated maintenance cycle represented as either the volume of water, timeframe, or a mechanical function of the system that signifies when regular maintenance is expected to be needed.

(c) Once Alco has provided Baykeeper with the above information, Baykeeper shall have fourteen days to comment on and suggest revisions to the treatment system design.  Alco shall adopt Baykeeper's suggested revisions unless Alco invokes Dispute Resolution.

(d) Alco may petition Baykeeper for an extension of time to install the additional treatment system discussed above.  Based on a showing that the timeframe is infeasible despite Alco's best efforts, Baykeeper shall grant a three month extension for the installation of the treatment system.

38.  **Site Sweeping and Cleaning:**  Within 45 days of executing this Consent Decree, Alco shall complete a thorough cleaning of the San Leandro Facility using mechanical sweeping.  Alco

shall acquire a push-type outdoor vacuum and conduct manual sweeping with the push vacuum in areas unreachable by mechanical sweeping.  Alco shall powerwash the Yard Process Area at least annually or more frequently as necessary to remove shavings, particulates, oil and grease and other pollutants from the Facility grounds.  The powerwash shall utilize all appropriate controls to prevent any discharges to Doolittle Drive or any storm drains.  Immediately upon execution of this Consent Decree, Alco shall sweep the Facility not less than one time per day and more often as necessary to prevent the tracking of metal shavings and other pollutants outside the Facility and to minimize the area within the Facility where metal shavings and other pollutants are disbursed.  Alco shall employ mechanical sweepers to reach all areas where mechanical sweepers can effectively reach and push vacuum sweeping in areas unreachable by mechanical sweeping.  At least annually, Alco shall conduct a thorough inspection of the Facility to determine whether an additional comprehensive site cleaning is warranted with power wash or similar effective techniques.  Alco shall not discharge any waste fluids or solid wastes generated in site cleaning to storm drain inlets or waterways.  Alco shall store and dispose of all wastes generated in Facility cleaning and sweeping in a manner that complies with all local, state, and federal laws.  By October 1, 2008, Alco shall either retain an outside commercial sweeping vendor that uses a regenerative sweeper or obtain its own regenerative sweeper and sweep Doolittle Drive and Davis Street within 500 feet of the Facility's entrances every two weeks in the dry season (June 1 to September 30) and on a weekly basis during the wet season (October 1 to May 31).

39.  **Site Sweeping and Cleaning Log:**  Alco shall keep a Log of the sweeping and any other site cleaning activity performed at the San Leandro Facility.  The Log shall identify the person carrying out the sweeping or cleaning, the locations that were swept or cleaned, the date and time that sweeping or cleaning was completed, and any other relevant information.  Alco shall make the sweeping and cleaning log available to Baykeeper upon request.

40.  **Covering of Storage Areas:**  At the end of every business day and during any rainfall, Alco shall store all collected loose and finely divided metal materials, fragments, or debris that have been processed with lubricating oils in the course of grinding, cutting, or shredding in an

1   enclosed building or roofed area or in bins covered with secured tarps or other rain-impermeable

2   cover.

3   41.   **Waste, Hazardous Materials Storage Area:**  On and after the date of execution of this

4   Consent Decree, Alco shall implement a system:  (1) for identifying all toxic and hazardous

5   materials, including batteries, oil, solvents and hazardous or potentially hazardous waste

6   materials such as waste oil and used absorbent materials that are delivered to or generated at the

7   San Leandro Facility and (2) for segregating such identified materials from other materials at the

8   Facility.  By September 30, 2005, Alco shall complete a thorough site inspection to identify all

9   toxic and hazardous materials, including batteries, oil, solvents and hazardous or potentially

10  hazardous waste materials such as waste oil and used absorbent materials stored or kept at the

11  San Leandro Facility.  Thereafter, Alco shall store all such materials in a single area, under

12  cover and on an impermeable surface, out of potential contact with flooding associated with

13  storm water.

14  42.   **Storage of Materials Outside the Facility:**  Immediately upon execution of this Consent

15  Decree, Alco shall not store scrap metal or waste outside of the Facility boundary.  Alco shall

16  prevent stored scrap metal or wastes from spilling over Facility fencing onto areas outside of

17  such fencing.

18  43.   **Vehicle and Equipment Management:**  Within 45 days of the execution of this Consent

19  Decree, Alco shall implement BMPs to minimize pollutant release from stored or parked

20  equipment such as forklifts, hydraulic lifts, and other heavy equipment.  Such BMPs shall

21  include parking all mobile heavy equipment in one or more consolidated paved parking areas

22  overnight and during other prolonged hours of non-operation of such equipment, placing drip

23  pans under stored or parked equipment found to be leaking pollutant-containing fluids until such

24  time as the leak is repaired, weekly inspections for evidence of leaks from such equipment, and

25  immediate cleaning up of any spills, drips, or leaks from such equipment (with absorbent

26  materials or similar effective technique).  Alco shall dispose of spilled substances and used

27  absorbent materials in accordance with all local, state, and federal laws and regulations.  Alco

28  shall not store or park heavy equipment such as forklifts and hydraulic lifts outside of the

Facility boundary that have the potential to release oil and other contaminants on public Streets, including Eden Road, or sidewalks surrounding the San Leandro Facility for time increments greater than two hours.  Alco shall minimize the storing or parking of any other Alco vehicles (such as trucks and trailers) or Facility vehicles on public Streets, including Eden Road, or sidewalks surrounding the San Leandro Facility to the extent practicable.  Such stored or parked vehicles shall either be empty or shall store only covered materials, and Alco shall inspect such vehicles daily to ensure that parked or stored vehicles are not leaking oil, fuel or other contaminants.

44.  **Vehicle and Equipment Maintenance:**  Alco shall not conduct vehicle or movable equipment maintenance or repair in outdoor, uncovered areas at the San Leandro Facility during rainfall. Alco shall conduct vehicle and movable equipment maintenance and repair indoors or under cover, and begin to utilize the warehouse to the south of the Yard Process Area for all vehicle and movable equipment maintenance by January 1, 2009.  Whenever Alco conducts maintenance or repair activities Alco shall inspect the area where the maintenance or repair occurred and clean-up any waste products, including pollutant containing fluids, deposited or spilled on the ground as a result of the maintenance or repair.

45.  **BMP Maintenance:**  Beginning immediately, Alco shall maintain structural BMPs at the site in good operating condition at all times.

46.  **Fueling Activities:**  Alco and/or Alco's contractors shall conduct fueling activities only in designated areas on an impervious surface where storm water runoff is collected and treated prior to discharge.  Alco shall require that its fuel supplier or employees place drip pans underneath vehicles being fueled, immediately control and cleanup any fuel spills and remove and dispose of all associated wastes in accordance with all applicable local, state, and federal laws and regulations. Alco shall ensure that any fueling contractor is informed about and adheres to these requirements.

47.  **Storage of Waste and Received Material Bins:**  By September 30, 2005, Alco shall store all waste storage bins at the San Leandro Facility indoors, or if stored outdoors, shall cover such waste storage bins, except when bins are being dumped, to prevent dust and other materials from

being blown outside the waste storage bins and to minimize storm water runoff from such bins. Alco shall unload all drop boxes containing received materials by the end of each work day in which they are received or the following workday for night time deliveries or shall cover such drop boxes with a secured tarp or similar device if boxes are to be stored overnight with materials still in them.

48.   **Amendment of SWPPP:**  By January 1, 2009, Alco shall amend the Facility SWPPP to incorporate all improvements and BMPs set forth in this Consent Decree.  Alco shall also update the SWPPP as needed to make the document consistent with the requirements of the General Permit and reflect the current stormwater BMPs at the Facility.  A copy of the Amended SWPPP shall be provided to Baykeeper within seven (7) days of completion.  Within fourteen (14) days of notification by Baykeeper, Alco shall make all reasonable changes to the Amended Facility SWPPP that are requested by Baykeeper unless Alco seeks Dispute Resolution.

49.   **Amendment of the Site Map:**  By January 1, 2009, Alco shall amend the Facility Site Map to include all components set forth in the General Permit and this Consent Decree.  A copy of the Amended Site Map shall be provided to Baykeeper within seven (7) days of completion.  Within fourteen (14) days of notification by Baykeeper, Alco shall make all reasonable changes to the Facility Site Map that are requested by Baykeeper unless Alco seeks Dispute Resolution.

## IV.   SAMPLING, MONITORING, INSPECTION & REPORTING

50.   **Sampling Program:**  Subject to the limitations set forth in Paragraphs 51 to 53, Alco shall collect samples from each Discharge Point at the Mare Island and San Leandro Facilities according to the following sampling schedule:

(a)  During the first year of this Consent Decree, and except as set forth below in this paragraph, Alco shall collect five storm water samples per year from each Discharge Point at the Mare Island and San Leandro Facilities.  If two consecutive samples from each of the Discharge Points results in pollutant levels below the Target levels set forth in the Sampling Chart for any parameter sampled, Alco need not conduct additional sampling during that Wet Season for such parameter.

(b) During the second year of this Consent Decree, and except as set forth below in this paragraph, Alco shall collect four storm water samples from each Discharge Point at the Mare Island and San Leandro Facilities.

(c) During the third year of this Consent Decree, Alco shall collect three storm water samples from each of the Discharge Points at the Mare Island and San Leandro Facilities.

(d) During the fourth and fifth year of this Consent Decree, Alco shall collect four storm water samples from each Discharge Point at the Mare Island and San Leandro Facilities.  Alco may take samples from non-qualifying events for the purposes of acquiring four samples.  When providing the sample results to Baykeeper, Alco shall note how long it was raining prior to sample collection and how much rainfall occurred on any of the preceding days, if any.

(e) Alco shall analyze each storm water sample collected for each of the parameters listed on the Sampling Chart attached hereto as Exhibit 1.  Should operations change at the either the Mare Island and San Leandro Facilities, Alco shall conduct sampling for any additional priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in Alco's storm water discharges as a result of the changed operations.

(f) Where Alco discharges storm water into a storm drain inlet or catch basin, Alco may choose to collect a sample below any insert or treatment system.  If Alco chooses not to collect a post-filtration or post-treatment sample, the chemical quality of storm water samples entering a storm drain inlet or catch basin containing a fabric insert shall be considered the same as a sample collected below the insert.

51.  **Timing of Samples:**  While this Consent Decree is in effect, Alco shall take all storm water samples within the first two hours that flow is observed at the Discharge Points for each storm event.

52.  **Lack of Qualifying Storms:** Although Alco is required to take samples from qualifying storm

events to meet the requirements of the General Permit, Alco may sample any storm event, including non-qualifying events, for the purposes of Paragraph 50 provided that the sampled event is submitted with data from the on-site weather station, i.e. hourly rainfall totals for the preceding three days.  If samples are not collected from the designated sampling locations for the above referenced storm event due to lack of discharge, Alco shall document such fact in a Storm Water Sampling Log.  Alco shall provide such Log to Baykeeper upon request.

53.   **Qualified Laboratory Analysis:**  Alco shall have all storm water samples collected pursuant to this Decree delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times.  The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or below the Target levels set forth in the attached Exhibit 1.

54.   **Presentation of Sample Results:**  Alco shall provide complete results from Alco's sampling and analysis to Baykeeper within fourteen (14) days of receipt of the laboratory report from each sampling event.  Each time Alco receives sampling results, Alco shall provide a chart in digital or hardcopy form that summarizes the results of all the samples and includes the Target and Benchmark levels for comparison.  The summary chart shall consistently present the sample summaries in micrograms per liter for all of the metal parameters tested.  Target and Benchmark levels included for comparison shall also be presented in micrograms per liter for reference.

55.   **Compliance with Best Available Technology Economically Achievable and Best Conventional Pollutant Control Technology:**  Effluent Limitation B(3) of the General Permit requires that BMPs be developed and implemented to achieve Best Available Technology Economically Achievable ("BAT") and Best Conventional Pollutant Control technology ("BCT").  Alco agrees to develop and implement BMPs necessary to comply with the BAT/BCT standard in the General Permit.  These BMPs shall include, but are not limited to, the measures identified in this Consent Decree.  Alco will compare analytical results of storm water samples with the Benchmark levels in Exhibit 1 to evaluative the effectiveness of BMPs.  If Alco's storm water results exceed a Benchmark level in Exhibit 1, Alco agrees to comply with the assessment and action plan requirements specified below.

56. **Compliance with Applicable Water Quality Standards:**  Receiving Water Limitation C(2) in the General Permit requires that Alco "not cause or contribute to the exceedance of any applicable water quality standards."  Target levels in Exhibit 1 are taken from the California Toxics Rule, codified at 40 C.F.R. § 131.38 ("CTR"), and the San Francisco Bay Regional Water Quality Control Board's Water Quality Control Plan ("Basin Plan").  The Parties agree that if the water quality standard in the CTR or the Basin Plan that apply to the constituents in Exhibit 1 change during the life of this Consent Decree, then the Target Levels will be deemed revised to reflect the current, applicable water quality standards.  Alco agrees to develop and implement BMPs designed to achieve the Target levels in Exhibit 1.  Alco shall compare analytical results of storm water samples with the Target Levels to evaluate the effectiveness of its BMPs.  Also agrees to comply with the assessment and action plan requirements specified below if any of Alco's storm water result exceed the Target levels.

57. **Action Plan:**  Within 45 days of receiving any sample results showing that pollutant concentrations in Alco's storm water discharges have exceeded an Exhibit 1 Target or Benchmark level during the life of this Consent Decree, Alco shall prepare and send to Baykeeper an action plan or revised action plan designed to make progress toward eventual compliance with Exhibit 1 Target and Benchmark levels ("Action Plan").  Each Action Plan will set or set forth the sample results showing the exceedance, the possible cause and/or the source of the exceedance, measures that Alco will take to reduce the level of pollutants associated with the exceedances in future storm water discharges to or below the Target and Benchmark levels in Exhibit 1, and a schedule to implement the proposed BMPs by the earliest practicable time, generally not to exceed thirty days.  Should Alco decide that structural measures are necessary to resolve pollutant problems, and such structural measures will require more than 30 days to design and install, Alco shall contact and provide Baykeeper with the reason for the additional time required and the expected date of implementation.  Alco shall not unreasonably delay in implementing additional structural measures.  In preparing any Action Plan, Alco shall consider specifying comprehensive, site specific storm water testing within the Facility to identify areas within the Facility that are responsible for storm water pollutant generation and the adoption of

BMPs specifically tailored for such areas. Baykeeper shall have thirty days to comment on and suggest revisions to the Action Plan. Alco shall adopt Baykeeper's suggested revisions unless Alco invokes Dispute Resolution.

(a). In years four and five of this Consent Decree, Alco shall provide Action Plans for each Facility on February 1st and June 15th. The February 1st Action Plan shall include all storm water samples taken prior to January 16 of that storm water year that exceed an Exhibit 1 Target or Benchmark levels. The June 15th Action Plan shall include all storm water samples taken between January 15th and May 31st of that storm water year that exceed an Exhibit 1 Target or Benchmark levels. The February 1st and June 15th Action Plans for each Facility shall include all of the components of the Action Plan as described above in Paragraph 57.

58. **SWPPP Amendment:** At the conclusion of the rainy season, by the due date for Annual Reports pursuant to this Consent Decree, Alco shall amend its SWPPP to include all additional BMP measures designated in each Action Plan. Alco shall submit its revised SWPPP to Baykeeper within ten days of completing any SWPPP revisions.

59. **Liquidated Mitigation Payments:** If any storm water sample from the Mare Island or San Leandro Facility exceeds Benchmark pollutant levels as set forth in Exhibit 1 after October 1, 2006, Alco shall pay liquidated mitigation of $500 for each exceedance of any Benchmark level for any one pollutant parameter in any given sampling event, subject to a cap of the lesser of (1) $10,000 per storm event per Alco facility, or (2) total annual liquidated mitigation payment liability of no more than $35,000. Notwithstanding the foregoing, any storm water samples that Alco takes within either the Mare Island or San Leandro Facility for the purpose of identifying site specific areas of pollutant generation as part of designing remedial measures pursuant to paragraphs12 or 37 shall not be subject to the payment requirement of this paragraph. In years four and five of this Consent Decree, Alco may choose among all the storm water samples taken, the four samples that will be used for the purposes of calculating liquidated penalty payments that may be due, provided that Alco includes all qualifying events that may occur in that storm water year.

60.  **Reduction in Liquidated Mitigation Payments:**  Alco shall be allowed a 50% reduction in any stipulated mitigation payments due pursuant to the preceding paragraph if Alco tenders the reduced payment to Baykeeper along with a certification signed under penalty of perjury stating that Alco will, within one year, spend or be under contract to spend the balance of the sum that would otherwise be due as stipulated mitigation payments on alternative environmental enhancements.  Alternative environmental enhancements shall include:  (a) completing indoor or covered recycling facilities at the Mare Island or San Leandro Facilities, including the construction of canopies over processing or equipment parking areas; (b) the acquisition of a new state of the art storm water filtration system designed for metal recycling facilities approved by Baykeeper (including any storm water retention capacity integrated with the filtration system), or (c) construction and operation of the appurtenances needed to discharge storm water runoff from the Mare Island or San Leandro Facilities through a publicly owned treatment works sanitary sewer system provided that Alco includes as part of this sewer connection project the construction and operation of storm water retention devices (such as retention ponds, basins, or tanks) to allow storage of storm water for disposal after peak rainfall-related sewer collection system flows have subsided.  Alco must further submit within thirty days of completing the foregoing alternative environmental enhancement project a subsequent notice to Baykeeper explaining how Alco expended the funds and how this expenditure met the required terms.  If Alco fails to meet all conditions of this paragraph, then it must pay the balance of the stipulated mitigation payment sum not yet paid within 13 months from the date the payment was originally due.  Alco must further pay 5% per annum interest on such liquidated mitigation payment sums Alco has deferred paying pursuant to this paragraph.  This paragraph does not apply to stipulated mitigation payments incurred during the fourth and fifth years of this Consent Decree.

61.  **Tendering of Liquidated Mitigation Payments:**  Alco shall pay any liquidated mitigation payments due pursuant to this Consent Decree within thirty (30) days of receiving relevant laboratory results.  In years four and five of this consent decree, Alco shall pay any liquidated payments due pursuant to Paragraph 59 on June 1st following the wet season in which the samples were taken.  Alco shall tender payment to Environmental Advocates for deposit in the

Amended Consent Decree                                      Page 26

Environmental Advocates Client Trust Fund account for Environmental Advocates' tendering to the Rose Foundation for the Environment.  Environmental Advocates shall tender such payments to Rose Foundation for the Environment within thirty days of receipt.  The liquidated mitigation shall be used for projects relating to the reduction, prevention, or mitigation of, or research on, the effects of discharges of pollutants to the San Francisco Bay or other area waters.

62.   **Site Inspections and Sampling:**  Baykeeper may have access to either the Mare Island or San Leandro Facility to take its own samples of Alco's storm water discharge and/or inspect compliance with the Consent Decree during normal business hours with three hours notice, except that Alco shall have the right to deny access if extraordinary circumstances would make the inspection unduly burdensome and pose significant interference with business operational necessities.  In such case, Alco shall specify at least three days within the next four weeks upon which a Baykeeper inspection may proceed, with three hours notice, during normal business hours.

63.   **Facility Monitoring:**  Within 30 days of execution of this Consent Decree, Alco shall conduct daily inspections of the Mare Island and San Leandro Facilities on the days that the facilities are operating.  Such inspections shall include driveways, equipment storage areas, material sorting and storage areas, hazardous material areas, and all process areas.  All discharge locations shall also be inspected for contamination and accumulation of wastes such as shredded metals, fines, metallic sediment, sand, grit, oily substances, oily sheens upon any standing water, and other contaminants associated with operations at the Facilities.  Alco shall clean or remove such contaminants immediately.  Where spills and leaks of oil, mechanical fluids, or other liquid wastes have occurred, Alco shall treat such areas immediately with dry adsorbent materials.  Alco shall sweep up or remove and place such adsorbent materials in a proper disposal container within twenty-four (24) hours in compliance with all applicable local, state, and federal laws and regulations.

64.   **Training:**  Upon entry of this Consent Decree and annually thereafter, Alco shall conduct training for all of its workers to explain the requirements of this Consent Decree, the Facility SWPPP, and the General Permit to the extent applicable to such worker.  Additionally, within

one week of hiring new employees other than office or clerical personnel, Alco shall conduct training for such new employee to explain the requirements of this Consent Decree, the SWPPP and the General Permit.  The training shall focus on the worker's role in implementing various Consent Decree measures including, for example, implementation of BMPs, daily sweeping, daily Facility inspections, etc.  All training shall be conducted bilingually (i.e., Spanish/English or other pertinent language) if Alco employs any persons whose primary language is other than English.  Alco shall integrate any new training requirements resulting from this Consent Decree in its SWPPP.  If Alco purchases a regenerative sweeper, Alco shall ensure that (1) the staff operating the sweeper have been trained in the proper use and maintenance of the regenerative sweeper and (2) that the sweeper will be maintained according to the manufacturer's instructions.

65.  **Reports:**  During the life of this Consent Decree, Alco shall provide Baykeeper with a copy of all documents pertaining to the General Permit submitted to the Regional Water Quality Control Board or the State Water Resources Control Board concerning the Mare Island and San Leandro Facilities, including all documents and reports submitted to the Regional Board as required by the General Permit.  Such documents and reports shall be mailed to Baykeeper contemporaneously with submission to the Regional or State Board.

## V.    MITIGATION, FEES, AND COSTS

66.  **Mitigation for Alleged Past Violations:**  As mitigation of the violations alleged in Baykeeper's Notice and Complaint, Alco shall pay the sum of $50,000.00 to the Rose Foundation for the Environment for projects relating to the reduction, prevention or mitigation of, or research on, the effects of discharges of pollutants in storm water to the San Francisco Bay.  Alco shall tender payment to the Rose Foundation for the Environment, 6008 College Avenue, Oakland, California  94618 4 in four quarterly installments of $12,500 each tendered on or by October 1, 2005; January 2, 2006, April 3, 2006 and July 3, 2006.  Alco shall provide notice to Baykeeper that Alco has tendered these payments.  Alco

67.  **Baykeeper's Attorneys Fees and Costs:**  Alco shall reimburse Baykeeper in the amount of $66,000 to help defray Baykeeper's investigation fees and costs, expert fees and costs,

reasonable attorneys' fees, and all other costs incurred as a result of investigating the activities at the Mare Island and San Leandro Facilities, bringing these matters to Alco's attention, and negotiating a resolution of this action in the public interest.  Alco tender this sum in four quarterly payments of $16,500 each tendered on or by October 1, 2005; January 2, 2006, April 3, 2006 and July 3, 2006.  Alco shall tender payment to Environmental Advocates for deposit in the Environmental Advocates Client Trust Fund account.

(a) **Amended Fees and Costs**: Alco shall reimburse Baykeeper in the amount of $12,843.70 to help defray Baykeeper's investigation fees and costs, expert fees and costs, reasonable attorneys' fees, and all other costs incurred as a result of investigating, negotiating, and amending this Consent Decree between the parties.  Alco shall tender payment to Environmental Advocates for deposit in the Environmental Advocates Client Trust Fund account by September 30, 2008.

68.  **Compliance Monitoring Funds:**  Alco shall reimburse Baykeeper one thousand and seven hundred and fifty dollars ($1,750) per year for three years, in the total amount of five thousand two hundred and fifty dollars ($5,250) for costs and fees associated with monitoring Alco's compliance with this Consent Decree.  Monitoring activities include site inspections, review of water quality sampling reports, review of annual reports, discussion with representatives of Alco concerning potential changes to compliance requirements, water quality sampling, etc.  Alco shall tender payment, in yearly installments of $1,750 commencing on January 1, 2006, to Environmental Advocates for deposit in the Environmental Advocates Client Trust Account.

(a) **Amended Compliance Monitoring Funds:**  Alco shall reimburse Baykeeper four thousand dollars ($4,000) per year for two years, in the total amount of eight thousand ($8,000) for costs and fees associated with monitoring Alco's compliance with this Amended Consent Decree.  Payments shall be made annually, commencing on January 1, 2009, and shall be made to Environmental Advocates for deposit in the Environmental Advocates Client Trust Account.

**VI.     DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE**

69.  If a dispute under this Consent Decree arises, or either Party believes that a breach of this

Consent Decree has occurred, the Parties shall schedule a meet and confer within seven (7) days of receiving written notification from the other Party of a request for a meeting to determine whether a violation has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the violation.  If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least seven days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Northern District of California which shall retain jurisdiction over the Action for the limited purposes of enforcement of the terms of this Consent Decree.  The parties shall be entitled to seek fees and costs incurred in any such action, and such fees and costs shall be awarded, pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. §1365(d), and applicable case law interpreting such provision.

## VII.    JURISDICTION

70.   For the purposes of this Consent Decree, the Parties stipulate that the United States District Court for the Northern District of California has jurisdiction over the Parties and subject matter of this Action.  The Parties stipulate that venue is appropriate in this Court.  The Parties further stipulate for purposes of this Consent Decree that the complaint states a claim upon which relief may be granted against Alco pursuant to Section 505 of the Act, 33 U.S.C. §1365, and that Baykeeper has standing to bring this action.

## VIII.   WAIVER AND RELEASES

71.   **Baykeeper Waiver and Release of Alco:**  Upon entry of this Consent Decree, Baykeeper, on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases Alco (and its agents, attorneys, representatives, employees, and assigns) from, and waives, all claims for damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed in this Action, for the alleged failure of Alco to comply with the Clean Water Act at the Mare Island and San Leandro Facilities, up to and through the term of this Consent Decree (hereafter "Claims"),

except as specifically provided for in this Consent Decree.

72. **Alco Waiver and Release of Baykeeper**:  Alco, on its own behalf and on behalf of its agents, attorneys, representatives, employees, and assigns, releases Baykeeper (and its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees) from, and waives all claims which arise from or pertain to this Action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to this Action.

73. **No Admission:**  The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation.  Nothing in this Consent Decree shall be construed as, and Alco expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by Alco of any fact, finding, conclusion, issue of law, or violation of law.  However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

## IX.    MISCELLANEOUS PROVISIONS

74. **Effective Date:**  The Effective Date shall be the date this Consent Decree is executed by both Parties.

75. **Term of Consent Decree:**  The Consent Decree shall continue in effect for a period of five years from the Effective Date.

76. **Execution in Counterparts:**  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

77. **Severability:**  In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

78. **Construction:**  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

79. **Authority to Sign:**  The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and

1   conditions of this Consent Decree.

2   80.  **Integrated Consent Decree:**  All agreements, covenants, representations and warranties,

3   express or implied, oral or written, of the Parties concerning the subject matter of this Consent

4   Decree are contained herein.

5   81.  **Mailing of Documents to the Parties:**  Any notices, documents or payments required or

6   provided for by this Consent Decree or related thereto that are to be provided to Baykeeper or

7   Environmental Advocates pursuant to this Consent Decree shall be hand delivered or sent by

8   U.S. Mail, postage prepaid, and addressed as set forth below, or shall be sent via electronic mail

9   to the following e-mail addresses:

10      Amy Chastain
11      San Francisco Baykeeper
        785 Market Street, Suite 850
12      San Francisco, CA 94103
        e-mail: amy@sfbaykeeper.org
13

14      Jodene Isaacs
        Environmental Advocates
15      5135 Anza Street
        San Francisco, California 94129
16      e-mail: jisaacs@enviroadvocates.com

17   Any notices or documents required or provided for by this Consent Decree or related thereto that are

18   to be provided to Alco pursuant to this Consent Decree shall be sent by U.S. Mail, postage prepaid,

19
20   and addressed as set forth below, or shall be sent via electronic mail to the following e-mail

21   addresses:

22      Michael Bercovich
23      Alco Iron and Metal Company
        1091 Doolittle Drive
24      San Leandro, CA  94577
        e-mail: michaelbercovich@alcometals.com
25

26      Christine K. Noma
        Wendel, Rosen, Black & Dean, LLP
27      P.O. Box 2047
        Oakland, CA  94604
28      e-mail:  cnoma@wendel.com

1  82. **Facsimile Signatures:**  Signatures of the Parties transmitted by facsimile or PDF electronic

2  format shall be deemed binding.

3  83. **Force Majeure:**  No Party shall be considered to be in default in the performance of any of its

4  obligations when a failure to perform is due to a "Force Majeure."  A Force Majeure event is

5  any act of God, war, fire, earthquake, flood, and restraint by court order or public authority.  A

6  Force Majeure event does not include normal inclement weather, such as anything less than or

7  equal to a 100 year/24 hour storm event or inability to pay.  Any Party seeking to rely upon this

8  paragraph shall have the burden of establishing that it could not reasonably have been expected

9  to avoid, and which by exercise of due diligence has been unable to overcome, the Force

10  Majeure.

11  84. If for any reason the Court should decline to approve this Consent Decree in the form presented,

12  the Parties shall agree to work together to modify the Consent Decree within 30 days so that it is

13  acceptable to the Court.

14  85. The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit

15  it to the Court for its approval and entry as a final judgment.

16  

17  SAN FRANCISCO BAYKEEPER

18  Date: _____, 2008

19  

20  _____

    by:  Sejal Choksi

    San Francisco Baykeeper

21  

22  

23  ALCO IRON AND METAL COMPANY

24  Date: August 22, 2008

25  *Michael Bercovich*

    _____

26  by:    Michael Bercovich

    Alco in-House Counsel

27  

28  

Amended Consent Decree                                  Page 33

82. **Facsimile Signatures:** Signatures of the Parties transmitted by facsimile or PDF electronic format shall be deemed binding.

83. **Force Majeure:** No Party shall be considered to be in default in the performance of any of its obligations when a failure to perform is due to a "Force Majeure." A Force Majeure event is any act of God, war, fire, earthquake, flood, and restraint by court order or public authority. A Force Majeure event does not include normal inclement weather, such as anything less than or equal to a 100 year/24 hour storm event or inability to pay. Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the Force Majeure.

84. If for any reason the Court should decline to approve this Consent Decree in the form presented, the Parties shall agree to work together to modify the Consent Decree within 30 days so that it is acceptable to the Court.

85. The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

SAN FRANCISCO BAYKEEPER

Date: _____**8/22**_____, 2008

by: Seja Choksi
San Francisco Baykeeper


ALCO IRON AND METAL COMPANY

Date: _____, 2008


by:   Michael Bercovich
Alco in-House Counsel

Amended Consent Decree

EXHIBIT 1
Storm Water Sampling Chart
ALCO Iron and Metals

| | Target Levels | | Benchmark Levels | |
|---|---|---|---|---|
| Constituent | Value | Basis | Value | Basis |
| Total Suspended Solids | | | 100,000 µg/l | *EPA Storm Water Benchmark* |
| Oil and Grease | | | 15,000 µg/l | *EPA Storm Water Benchmark* |
| Chemical Oxygen Demand | | | 120,000 µg/l | *EPA Storm Water Benchmark* |
| pH | 6.5 to 8.5 | *San Francisco Regional Water Quality Control Board ("SF-RWQCB"), Basin Plan, all surface waters* | 6.0-9.0 | *EPA Storm Water Benchmark* |
| Aluminum | | | 750 µg/l | *EPA Storm Water Benchmark* |
| Arsenic | 36.0 µg/l | *SF-RWQCB, Table 3-3, Basin Plan,  Salt Water Chronic* | 69.0 µg/l | *SF-RWQCB, Table 3-3, Basin Plan,  Salt Water Maximum Concentration, 1 hr* |
| Cadmium | 9.3 µg/l | *California Toxics Rule ("CTR") Criteria: Saltwater Aquatic Life protection CCC (Chronic)* | 15.9 µg/l | *EPA Storm Water Benchmark* |
| Chromium III | - | - | 2417 µg/l | *SF-RWQCB, Table 3-3, Basin Plan,  Salt Water Maximum Concentration, 1 hr average, <u>objective may be met as total chromium</u>* |
| Chromium VI | 50.0 µg/l | *CTR Criteria: Saltwater* | 1100 µg/l | *SF-RWQCB, Table 3-3, Basin Plan,  Salt Water* |

| | | | | |
|---|---|---|---|---|
| | | *Aquatic Life protection CCC (Chronic)* | | *Maximum Concentration, 1 hr average, <u>objective may be met as total chromium</u>* |
| Chromium total | 50.0 µg/l | *CTR Criteria: Saltwater Aquatic Life protection CCC (Chronic)* | 1100 µg/l | *SF-RWQCB, Table 3-3, Basin Plan,  Salt Water Maximum Concentration, 1 hr average, <u>objective may be met as total chromium</u>* |
| Copper | 3.1 µg/l | *CTR Criteria: Saltwater Aquatic Life protection CCC (Chronic)* | 63.6 µg/l | *EPA Storm Water Benchmark* |
| Iron | | | 1000.0 µg/l | *EPA Storm Water Benchmark* |
| Lead | 7.1 µg/l | *CTR Criteria: Saltwater Aquatic Life protection CCC (Chronic)* | 81.6 µg/l | *EPA Storm Water Benchmark* |
| Mercury | 0.94 µg/l | *EPA NAWQC Criteria: Saltwater Aquatic Life protection (Chronic)* | 2.4 µg/l | *EPA Storm Water Benchmark* |
| Nickel | 7.1 µg/l | *SF-RWQCB, Table 3-3, Basin Plan,  Salt Water Chronic* | 1417 µg/l | *EPA Storm Water Benchmark* |
| Zinc | 58.0 µg/l | *SF-RWQCB, Table 3-3, Basin Plan,  Salt Water 24 hr* | 117 µg/l | *EPA Storm Water Benchmark* |